UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-CR-80211-MARRA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KETTY GONZALEZ,

    Defendant.
_____/

FILED by _____ D.C.

FEB 21 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**ORDER DENYING GOVERNMENT'S MOTION TO APPLY BOND DEPOSIT FOR PARTIAL PAYMENT OF RESTITUTION**

This matter is before the Court pursuant to an Order of Reference from United States District Judge Kenneth A. Marra [DE 131]. Before the Court is the Government's Motion to Apply Bond Deposit for Partial Payment of Restitution [DE 128], to which Defendant Gonzalez responded on November 21, 2012 [DE 130]. On January 3, 2013, the undersigned conducted an evidentiary hearing. At the conclusion of the evidentiary hearing, the Government requested time to obtain the transcript of Defendant Gonzalez's change of plea hearing and file a supplemental memorandum of law with regard to its motion. The Court granted that request, *see* DE 137, and the Government filed its supplemental memorandum on February 11, 2013. Although the Court also afforded Gonzalez an opportunity to file a response to the supplemental memorandum, she failed to do so. Accordingly, the matter is now ripe for disposition.

1

## I. Background

On December 21, 2011, a grand jury sitting in this District returned an Indictment charging Defendant Ketty Gonzalez with mail fraud in violation of Title 18, United States Code, Section 1341 and conspiracy to commit mail fraud in violation of Title 18, United States Code, Section 1349. DE 1. On January 20, 2012, Gonzalez appeared before a United States Magistrate Judge for a detention hearing and was ordered released on a $100,000 personal surety bond and a $30,000 bond secured by a 10 percent cash deposit with the court. The bonds were co-signed by Guillermo Ramos, Martin Gonzalez, and Marie Gonzalez. Pursuant to the terms of the $30,000 bond, Ramos deposited $3,000 with the Clerk of the Court.

On February 24, 2012, Gonzalez pled guilty to Count One of the Indictment, conspiracy to commit mail fraud. *See* DE 74. As part of her plea agreement, Gonzalez agreed that she would "make a partial payment of restitution in the amount of $3,000 at the time of sentencing." Plea Agmt. ¶ 14, DE 75. On May 18, 2012, Gonzalez was sentenced to 30 months in prison. *See* DE 114. Approximately six months later, Gonzalez and the Government filed cross-motions: the Government asks that the $3,000 deposited on Gonzalez's behalf be applied to the payment of her court-ordered restitution [DE 128], and Gonzalez asks that the money be returned to Ramos [DE 129].[1]

## II. Evidentiary Hearing

The Court held an evidentiary hearing on January 3, 2013. Present at the hearing were Defendant Gonzalez, her counsel Michael Gelety, Esq., interested

---
[1] Gonzalez's motion has not been referred to the undersigned for disposition.

party Guillermo Ramos, and Assistant United States Attorney Ann Marie Villafaña. Defendant Gonzalez participated in the proceedings through the aid of a Spanish interpreter. The Court received testimony from Mr. Ramos and from Special Agent William Stewart of the Federal Bureau of Investigation, and also received Government's exhibits KG-1 through KG-6 into evidence.

Ramos testified that only $200 to $300 of the money he posted on behalf of Defendant Gonzalez belonged to him. He raised the remainder of the funds from various family members. These family members included Martin Gonzalez, Ivan Solas, Belkys Solas, and another of Gonzalez's sisters. On cross examination, Ramos admitted that he could not provide an accounting of the amounts he received from specific individuals. That is, he did not recall what monies came from whom. He did testify, however, that none of the money came from Gonzalez herself, either directly or indirectly, and his testimony as to this point was uncontradicted.

Special Agent Stewart testified that during the period from April 30, 2010 to November 18, 2011, Gonzalez received $65,200 from "Health Care Are Us," a fraudulent healthcare operation. This testimony was corroborated by Government's Exhibit KG-6, a ledger of payments from Health Care Are Us to Gonzalez. Additionally, during the course of the Government's investigation, Stewart learned that Ramos was unemployed and received some kind of veterans' benefits. Stewart also recalled that after Gonzalez was arrested, there was a negotiation in which Stewart's counsel convinced the Government to stipulate to a 10 percent $30,000

bond instead of its initial demand of a 10 percent $100,000 bond.[2] Additionally, during the course of negotiating Gonzalez's plea agreement, there was some discussion as to what Gonzalez would initially pay towards her total restitution, and it was eventually agreed that Gonzalez would make a restitution payment of $3,000 at the time of sentencing. However, Stewart could not recall any discussions about whether that initial payment would come from the monies posted for Gonzalez's bond.

### III.   Legal Standard

Ordinarily, once a criminal defendant has satisfied the conditions of her bond, the court must "exonerate a surety who deposits cash in the amount of the bond or timely surrenders the defendant into custody." Fed. R. Crim. P. 46(g). But under specified circumstances, money deposited with the court for the purposes of bond may be applied to a criminal fine or restitution:

> On motion of the United States attorney, the court shall order any money belonging to and deposited by or on behalf of the defendant with the court for the purposes of a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and before sentencing except upon a showing that an assessment, fine, restitution or penalty cannot be imposed for the offense the defendant committed or that the defendant would suffer an undue hardship. This section shall not apply to any third party surety.

28 U.S.C. § 2044 ("Section 2044").

---

[2] At Gonzalez's detention hearing, the Government did in fact recommend that Gonzalez be released on a 10 percent $30,000 bond.  See DE 48.

## IV. Discussion

It is undisputed that the $3,000 at issue has been deposited "with the court for the purposes of a criminal appearance bond." Moreover, the Government concedes that the plain text of Section 2044 prohibits the Court from applying funds belonging to a third party to a criminal defendant's restitution. United States' Supp. Mem. of Law Regarding Mot. to Apply Bond Deposit for Partial Payment of Restitution at 5, Feb. 11, 2013, DE 139. *See also United States v. Equere*, 916 F.Supp. 450 (E.D. Pa. 1996) (holding same). In other words, if the money deposited by Ramos does not "belong to" Gonzalez, Section 2044 does not apply. Accordingly, there are only two questions before the Court: (1) whether the burden of showing that the money posted for bond "belong[ed] to" the defendant rests with the government or with the defendant; and (2) whether the party bearing that burden has met it. Very few courts have had the opportunity to consider these particular issues.

### A. Burden of Showing Whether Funds Belong to Defendant

A number of courts have appeared to assume, although none has squarely held, that the burden of demonstrating the funds belonged to the defendant rests with the Government. *See* Report & Recommendation on Def.'s Motion for Reconsideration 5, DE 359, *United States v. Desangles*, No. 10-14079-CR-Moore/Lynch (S.D. Fla. Feb. 17, 2012) (Government failed to come forward with evidence contradicting sworn affidavit of defendant's mother); *United States v. Dipofi*, Nos. 04-80707-01, 07-50695, 2008 WL 2622954 (E.D. Mich. Jul. 3, 2008)

(Government failed to "satisfactorily contest" defendant's evidence); *United States v. Harris*, Crim. A. No. 95-180, 1996 WL 291200, at *1 (E.D. La. May 29, 1996) (defendant submitted uncontroverted affidavits showing money belonged to relatives).

By contrast, the Government argues that Gonzalez bears the burden of demonstrating that the monies deposited with the court are not hers. In support of this proposition, the Government relies on *United States v. Bogart*, 490 F.Supp.2d 885 (S.D. Ohio 2007). In *Bogart*, the court concluded that the United States was entitled to certain bond monies deposited with the court where the defendant "ha[d] not established that he [was] the true owner of the bail money." *Id.* at 908. The Government interprets this language to mean that a criminal defendant bears the burden of showing that he or she does *not* have title to the bond money deposited with the court. But in granting the Government's motion under Section 2044, the *Bogart* court relied on a second rationale: it also noted that the defendant's father-in-law, Bodnar, admitted to loaning the bail money to the defendant. Since "[a] loan is a transaction wherein the lender gives up a [sic] rights in the funds loaned in exchange for a promise to repay the debt," the court reasoned, "Bodnar is, in effect, a note holder against [the defendant] and does not have an enforceable right with respect to the bail money." *Id.* Accordingly, *Bogart*'s persuasive value is uncertain.

Moreover, the Government is correct that our Court of Appeals and its predecessor have not had occasion to address this specific issue. But the holdings of those courts prior to the enactment of Section 2044 are instructive. *Accord United*

6

*States v. Sparger*, 79 F.Supp.2d 714, 716–18 (W.D. Tex. 1999). For example, in denying the government's motion to apply a bail bond to the payment of a criminal fine, the former Fifth Circuit noted:

> The purpose of bail is to secure the presence of the defendant; its object is not to enrich the government or punish the defendant. Like any other contract, a bail bond should be construed to give effect to the reasonable intentions of the parties, with the understanding that the construction should be in favor of the surety who may not be held liable for a greater undertaking than agreed to.

*United States v. Powell*, 639 F.2d 224, 225 (5th Cir. Mar. 1981) (citations omitted).[3] Just a few years later, its successor, the Eleventh Circuit, found that conditioning an appearance bond upon the defendant's payment of a criminal fine—in other words, the clerk's retention of funds put up as bail in order "to pay any fine that may subsequently be levied against the defendant after the criminal trial is over" violated the Eighth Amendment. *United States v. Rose*, 791 F.2d 1477, 1480 (11th Cir. 1986).[4]

Interpreting Section 2044 to place the burden of demonstrating ownership of funds on the Government would also be consistent with how the courts have interpreted sentencing law. At sentencing, "[t]he Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement." *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir.

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit issued before October 1, 1981 are binding upon courts located within the territory of the United States Court of Appeals for the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[4] In answering the limited questions before it, this Court need not, and thus does not, express any opinion as to Section 2044's constitutionality. *Cf. United States v. Higgins*, 987 F.2d 543, 547–48 (8th Cir. 1993) (Section 2044 does not violate Eighth Amendment's proscription against "excessive bail").

7

1999). By contrast, the defendant bears the burden when he asks the Court to apply guideline sections which *reduce* the applicable offense level. *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989). In resolving disputed sentencing facts, courts use the "preponderance of the evidence" standard. *See, e.g., United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1997) ("When a defendant challenges one of the factual bases of his sentence as set forth in the PSR, the Government has the burden of establishing the disputed fact by a preponderance of the evidence"); *United States v. Lee*, 818 F.2d 1052, 1057 (2d Cir. 1987) ("preponderance of the evidence" standard satisfies defendant's due process rights). Here, the Government's request under Section 2044 may be analogized to a sentencing enhancement, because it asks the Court to take money that would otherwise be returned and apply it to the defendant's restitution obligations. Furthermore, for the purposes of determining restitution, the Government bears the burden of demonstrating the loss suffered by a victim. 18 U.S.C. § 3664(e). On the other hand, the defendant bears the burden of demonstrating his or her financial resources and financial needs. *Id.* With regard to other restitution-related matters, "[t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." *Id.* The restitution statute also applies a "preponderance of the evidence" standard. *Id.* § 3664(d).

Finally, in enacting Section 2044, Congress upended centuries of settled law that required bail monies to be used for the sole purpose of inducing a criminal

defendant to comply with the terms of his pretrial release. If it also intended to place the burden of proof on the defendant, it could have easily said so. The fact that it did not suggests that Congress did not intend to shift the burden for reclaiming bail money to the defendant. For all of the foregoing reasons, the Court finds that under these circumstances, the Government bears the burden of showing, by a preponderance of the evidence, that the funds in question "belong[ed] to" Gonzalez and were not deposited by a third party surety.[5]

### B. Whether the Government Has Met its Burden

In summary, the Government's evidence at the hearing was that (1) Gonzalez earned a significant amount of money from the healthcare fraud while Ramos was not working; (2) Her sentence included restitution payments of $273,226.24; and that (3) Gonzalez's plea agreement required her to pay $3,000 towards restitution at the time of sentencing, an obligation that she has apparently failed to meet. This evidence is unconvincing. The Government has not satisfactorily demonstrated to the Court that the funds deposited with the Court belong to Gonzalez and not to third parties. Accordingly, the Government has failed to meet its burden.

### V. Conclusion

Having considered the evidence presented and the applicable law, the Court finds that the Government has failed to show by a preponderance of the evidence

---

[5] Section 2044 specifically states that it does not apply to any third party surety. Although the term "third party surety" is often used in the context of detention hearings to mean a bail bondsman or other corporate entity, a plain reading of Section 2044 reveals that this exclusion of third party sureties includes private individuals such as Ramos. *Accord United States v. Equere*, 916 F.Supp. 450, 452 (E.D. Pa. 1996).

9

that the funds in question belong to Gonzalez and not to any third party.[6]

Accordingly, it is hereby

**ORDERED** that the Government's Motion to Apply Bond Deposit for Partial Payment of Restitution [DE 128] is **DENIED.**

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 21st day of February, 2013.

*William Matthewman*
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[6] In making these findings, the Court does not countenance Gonzalez's apparent failure to comply with the terms of her plea agreement or her failure to fully comply with her restitution obligations as dictated by the Judgment in this case. The Government, of course, remains free to seek a remedy for Gonzalez's breach of her plea agreement, but it has not asked the Court for any such relief.